**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **DELTON LEE HENDRIX,**  )  <br>     **ID# 1372186**              )  <br>          **Petitioner,**          )  <br>vs.                                          )  <br>                                              )  <br>**NATHANIEL QUARTERMAN, Director,**  )  <br>**Texas Department of Criminal**      )  <br>**Justice, Correctional Institutions Division,**  )  <br>          **Respondent.**          )  | No. 3:08-CV-0813-M (BH)  <br>ECF  <br>Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and Special Order 3-251, this case has been referred for findings, conclusions, and recommendation.

**I. BACKGROUND**

Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §§ 2254 challenging his convictions for aggravated robbery and aggravated assault. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**A.    Factual and Procedural History**

On May 3, 2004, and April 27, 2004, the State indicted petitioner for the felony offenses of aggravated robbery and aggravated assault, alleged to have occurred on or about February 28, 2004, and February 29, 2004, respectively. (Trial Transcript[F04-49716-HQ]:2; Trial Transcript[F04-49717-HQ]:2). After petitioner pled not guilty to the charged offenses, on March 28-30, 2006, petitioner was tried before a jury and was found guilty of both offenses. (Tr.[F04-49716-HQ]:160; Tr.[F04-49717-HQ]:170; R. 5:37).[1]  On March 30-31, 2006, after a punishment hearing and

---

[1] Petitioner was also tried during the same trial for a third offense, a robbery, alleged to have occurred on March 1, 2004, but he was found not guilty of that offense. (R. 5:37).

petitioner's plea of true to both enhancement paragraphs in both indictments, the jury sentenced petitioner to thirty-five years for the aggravated robbery and eighty years for the aggravated assault. (Tr.[F04-49716-HQ]:168; Tr.[F04-49717-HQ]:178; R. 5:41-2; R. 6:101).

On direct appeal, petitioner alleged as the sole point of error that the trial court had erred in denying petitioner's requested jury instructions on a lesser-included offense in each case. The state appellate court recounted the evidence presented at trial as follows:

> Maggie Vasquez testified she was working the drive-thru window at the Jack in the Box restaurant at LBJ Freeway and Abrams Road. The final customer in line placed an order and drove up to the window to pick up his food. The customer, identified as Hendrix, handed Vasquez a $5 bill. As she opened the cash register to make change, Hendrix "started cussing" her and asked her to give him money. When Vasquez turned to ask if Hendrix was serious, she saw a "big gun" in her face and saw bullets in the gun. Vasquez was nervous because she knew her cash drawer had just been changed and held only a small amount of money. She started grabbing the money, and Hendrix was "reaching out with his hands" for the money "calling her the B word." Hendrix ordered her to "hurry up" and demanded "the 20s." Vasquez told him she did not have access to the safe. Hendrix continued to yell at her, so she took change from the drawer and began "throwing it in the car."
>
> Co-worker Martha Watson noticed the confrontation and heard Hendrix say to Vasquez, "Hold on a minute. I'm fixing to give it to you." Looking out the drive-thru window, Watson saw a gun in Hendrix's hand. She said the gun was a revolver and had bullets in the cylinder. Hendrix was pointing the gun out the window of his car toward Vasquez. Watson thought Vasquez was going to be killed. When Watson noticed that Vasquez seemed "frozen" with terror, she came up behind Vasquez and told her to give the customer what he wanted. Vasquez gathered up the "green money" from the cash register, stuffed it in the sack containing the food order, and handed it through the window to Hendrix. When he drove away, Vasquez fell to the floor crying. Jack in the Box employees gave police a license plate number and a description of the robber and the car.
>
> Dallas police detective Michael Swain conducted the investigation, interviewed the witnesses, and assembled a six-photo lineup that he took to Vasquez to view. After viewing the photographs, Vasquez identified Hendrix as the customer who robbed her at gunpoint.
>
> Detective Rudy Contreras interviewed Hendrix after his arrest and took two written statements from him. In his first statement, Hendrix said he went through the drive-thru at Jack in the Box to get food. As Vasquez handed him the food, she

2

asked, "Is this all you want?" Hendrix responded, "Yes, that's all I can afford." According to Hendrix, Vasquez gave him the food and then said she "thought this was going to be a robbery." Hendrix said he said no, and Vasquez "threw $25 in the car and she said that's all she had. That was it. I left." In his second written statement, Hendrix said he "forgot to mention that when I went through the Jack in the Box, I had the gun beside me in the passenger seat of the car. She could have seen it. She threw $ 25 in the car."

At trial, Hendrix testified he ordered a Jumbo Jack at the outside "voice box" and was instructed to drive around to the window. The Jumbo Jack was on sale for ninety-nine cents. Hendrix gave the attendant $1.25 and he received thirteen or sixteen cents in change. Vasquez gave him his food, and he thanked her. As he was about to drive away, Vasquez said, "Wait a minute. I thought you were gonna rob me." Hendrix responded, "Rob you?" He looked down and noticed the pistol sitting on the passenger seat. Hendrix said he told Vasquez, "I'm sorry. I must have forgot this gun was sitting in the seat." Vasquez told him to "hold on" and then opened the register and "threw $25 in the car." Hendrix told the jury that he thought she was "crazy" and drove off and kept going. He said he had the gun in the car but denied pointing it at Vasquez or having said anything about a robbery. Hendrix testified he was baffled by her statement and behavior but thought "if anything she's stealing money in the store and looking for somebody to blame it on."

*Hendrix v. State*, Nos. 05-06-00552-CR, 05-06-00553-CR, slip op. at 1-4 (Tex. App. – Dallas, July 24, 2007, pet ref'd).[2] Petitioner filed petitions for discretionary review in both cases on August 13, 2007, in which he raised the same issues he raises in his federal petition. (*See* PDR at index). Petitioner's PDRs were refused by the Texas Court of Criminal Appeals on December 5, 2007. *Hendrix v. State*, P.D.R. 1416-07; P.D.R. 1417-07.

Respondent has submitted a certification from the Clerk of the Court of Criminal Appeals, dated July 8, 2008, stating that, according to her records, petitioner has not filed a state habeas application. (Resp. Ex. A). Moreover, neither the on-line Dallas County record system nor the Court of Criminal Appeals' website reflect that petitioner has filed any state habeas application either before or after this certification was signed.

---

[2] The state appellate court recounted the facts of the aggravated assault case as well, but because petitioner's grounds do not concern that case, this Court has not quoted the state court's summary of the facts of that case.

On May 6, 2008, petitioner filed his petition for federal habeas relief. (*See* Pet. Writ of Habeas Corpus (Pet.) at 9).³ Respondent filed a response on September 22 2008, alleging that petitioner's claims are unexhausted, procedurally barred, and without merit, and provided the state court records. Petitioner did not file a reply brief.

**B.     Substantive Issues**

In his petition, petitioner claims that he is being held unlawfully because:

1) one of the State's fact witnesses in the aggravated robbery case admitted on the stand during cross-examination that she had lied when she identified him as the robber (ground one);

2) his conviction for aggravated robbery was a result of prosecutorial misconduct because the prosecutors asserted initially that they would play a videotape of the aggravated robbery, and then asserted that there was no videotape of the robbery, but one of the State's witnesses testified that she had seen the tape and identified petitioner as the robber from the videotape. (grounds two, three, and four).

## II. EXHAUSTION OF STATE REMEDIES

Respondent contends that petitioner has failed to exhaust his claims because he failed to file a state application for habeas corpus and because he did not raise the claims on direct appeal, although he presented them in a PDR.

A petitioner must fully exhaust state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b). To exhaust in accordance with § 2254, a petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for

---

³*See also Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999) (recognizing that prisoners file their federal pleadings when they place them in the prison mail system).

4

discretionary review or an application for writ of habeas corpus. *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432. The exhaustion requirement is not satisfied if claims are raised in a petition for discretionary review that were not first reviewed on direct appeal by an intermediate appellate court. *Myers v. Collins*, 919 F.2d 1074, 1077 (5th Cir. 1990).

Here, petitioner failed to present his claims to the Texas Court of Criminal Appeals because he did not file a state habeas petition. Although he did file a petition for discretionary review raising these same claims, these claims were not raised on direct appeal. The Texas Court of Criminal Appeals thus had no opportunity to consider the claims raised by petitioner in his federal petition.

It is well-settled that federal courts can dismiss without prejudice a federal petition for writ of habeas corpus that contains unexhausted grounds for relief. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982); *Thomas v. Collins*, 919 F.2d 333, 334 (5th Cir. 1990). As a matter of comity, the state courts must be given a fair opportunity to hear and consider the claims raised by an applicant before those claims are heard in federal court. *Picard v. Connor*, 404 U.S. 270, 275 (1971). Because the Texas Court of Criminal Appeals has not reviewed petitioner's claims on their merits, a ruling from the federal court at this juncture would preempt the state court from performing its proper function. *See Rose*, 455 U.S. at 518 (the exhaustion requirement is "designed to protect the state courts' role in the enforcement of federal law and prevent the disruption of state judicial proceedings").

Notwithstanding petitioner's failure to exhaust, the Court finds that the administration of justice would be better served in this case by bypassing the procedural issue and reaching the merits of the claim. *See* 28 U.S.C. § 2254(b)(2) (providing that the Court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under

§ 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Braswell v. Dretke*, No. 3:02-CV-0342-M, 2004 WL 2583605, at *4 (N.D. Tex. Nov. 12, 2004) (findings, conclusions, and recommendation which recognizes that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar), *accepted by* 2005 WL 1058865 (N.D. Tex. May 2, 2005).[4]

### III. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996. Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

---

[4] Respondent also asserts that petitioner's grounds for relief are also procedurally barred because, should this Court dismiss petitioner's petitioner, it would be dismissed at the state level because petitioner could have raised these grounds on direct appeal, but did not do so. However, because this Court has chosen to deny the unexhausted claims on their merits, as permitted under federal law, the Court declines to apply a procedural bar.

of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

In this case, the denial of petitioner's state writ constitutes an adjudication on the merits of the claims fairly presented to the Texas Court of Criminal Appeals in such writ. The AEDPA standards enumerated in 28 U.S.C. § 2254(d) thus apply to the claims raised in petitioner's federal petition.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless

7

they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### IV.  PERJURED TESTIMONY

In his first ground for relief, petitioner asserts that State's witness Martha Watson admitted during cross-examination that she had lied to help her friend, and that she was not present during the robbery.

The record from the trial reflects that Martha Watson testified that she was behind Maggie Vasquez when petitioner robbed the Jack in the Box, that she saw petitioner point a loaded gun at Vasquez, and that she instructed Vasquez to give the money to petitioner.  Watson also identified petitioner as the robber in court. (R. 3:24-30.  The record from the trial does not reflect that Watson ever admitted that she lied or ever stated that she was not present during the robbery, either during direct or cross-examination. (R. 3:16-38).

The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of false evidence that, although not solicited, is not corrected, violates a criminal defendant's due process rights, if the reliability of a given witness may be determinative of guilt or innocence.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  Petitioner has presented no evidence that perjured testimony was presented at trial.  Not only did Watson never testify that she lied on the stand, but Maggie Vasquez' testimony corroborated Watson's testimony that she was behind Vasquez during the robbery. (R. 3:45-6).  Petitioner is not entitled to relief on the basis of a conclusory allegation. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).  This

8

ground for relief is without merit and should be denied.

## V. PROSECUTORIAL MISCONDUCT

In his second, third, and fourth grounds for relief, petitioner asserts that the prosecution committed misconduct by first asserting that a videotape of the robbery would be shown at trial and then asserting that there was no videotape, although State's witness Martha Watson testified that there was a videotape in the safe at the store and that she had identified petitioner after seeing him on the tape. Petitioner does not specify what information this videotape might contain.

The record from the trial reflects that Martha Watson testified that she understood that there was a videotape from that day that was kept in the office but that she never saw it, and the manager of the restaurant told her that it did not portray a clear picture of the offense. (R. 3:29, 32-33). During cross-examination, defense counsel questioned Watson about whether she believed that there was a video in operation that day, who had told her the picture was not clear, and whether the videotapes had audio. (R. 3:32-3, 36). Detective Michael Swain, who conducted some of the investigation in the aggravated robbery case against petitioner, testified that he never received a videotape from the restaurant, and that the original offense report completed by the police officer who initially responded to the robbery stated that there was no videotape (R. 3:71, 89). Swain acknowledged during cross-examination that it would have been helpful to have a videotape of the encounter between petitioner and Maggie Vasquez. (R. 3:77-79). During the State's opening statement to the jury, the prosecutor mentioned that the jury would see a videotape in the aggravated assault case, but made no mention of a videotape in the aggravated robbery case. (R. 3:12-13). During closing arguments, defense counsel emphasized that the State had not brought forth any videotape as evidence that a robbery took place and suggested that the police could have obtained the videotape had it been asked for soon after the alleged offense. (R. 5:19-20).

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the suppression of evidence favorable to the accused and material to either guilt or punishment by the State violates a defendant's due process rights under the federal constitutional. Under *Brady*, the prosecution has the duty to turn over to the defense both exculpatory and impeachment evidence, whether or not it was requested by the defense. *United States v. Bagley*, 473 U.S. 667, 682, 685 (1985). Such evidence is material if there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed. A reasonable probability of a different result is shown when the suppression of evidence undermines confidence in the verdict. *Bagley*, 473 U.S. at 678; *Gibbs v. Johnson*, 154 F.3d 253, 256 (5th Cir. 1998).

Petitioner has failed to present any evidence of prosecutorial misconduct, including any evidence that any exculpatory evidence was withheld. He has not shown that a videotape showing the incident in question was in existence. From the record, it is clear that defense counsel knew that there was no videotape and used this as an argument in petitioner's favor. More importantly, petitioner has failed to establish that any videotape would contain exculpatory evidence. The only evidence in the record indicates that to the extent that any videotape ever existed, it was of poor quality and not usable. Because petitioner has failed to establish any reasonable probability that he would not have been convicted of aggravated robbery if the alleged videotape been presented, he is entitled to no relief on the basis of second, third and fourth claims.

## VI.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected in the state-court records, an evidentiary hearing appears unnecessary.

## VII.  RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant to 28 U.S.C. § 2254.

**SIGNED this 30th day of June, 2009.**

*[signature]*
**IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE**


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE